[Civ. No. 14037.   First Dist., Div. One.   Mar. 20, 1950.]

ELLEN BENNETT et al., Appellants, v. MILDRED LENOIR et. al., Respondents.

Hollister Smith for Appellants.

Stanley D. Whitney and Stanley C. Smallwood for Respondents.

SCHOTTKY, J. pro tem.—Ellen Bennett and Isabel Carl, registered nurses and members of the Directory of Registered Nurses of Alameda County, Inc., a nonprofit corporation organized for the purpose of placing registered nurses in employment, commenced an action against the directory and its directors and also against Jean Barthe and Bertha Baillard Cunliff, registered nurses, who were, respectively, executive director and assistant executive director, to restrain the latter two from operating an employment service for nonprofessional people under the name of Western States Placement Bureau or any similar name, or from the premises of the directory, and for an accounting of the proceeds of such prior operation, on the ground that such service had been a subsidiary operation of the directory and had been obtained by defendants Barthe and Cunliff unlawfully and through fraud and undue influence upon the directors. The complaint alleged that plaintiffs brought the action in a representative capacity, and had made no demand upon the officers and directors of the corporation for the reason that such demand would have been useless because the officers and directors were under the domi-

nation and control of defendants Barthe and Cunliff. The trial court found in favor of defendants on all issues and this appeal is by plaintiffs from the judgment rendered in favor of defendants.

There was little, if any, conflict in the evidence, and the factual situation as disclosed by the record is as follows:

Defendant Jean Barthe was an employee and agent of the Directory of Registered Nurses of Alameda County, Inc., with the title of executive director. She was invested by said corporation with full authority in the management of corporation affairs and had power to employ and discharge all office force and employees of the corporation. She had authority generally to assume full charge and control of all of the activities of the corporation, subject only to the control of the board of directors. The board of directors and the corporation reposed complete trust and confidence in her. She had been executive director of the directory since its inception, a period of 16 years. She directed both the directory and the subsidiary operation of the placement service from the same premises. She was not a member of the board of directors but generally attended meetings of the board.

On December 28, 1946, a meeting of the board was properly called and held at Miss Barthe's house with all members present except one. At this meeting Miss Barthe called the attention of the directors to the fact that her contract of employment would expire at the end of 1946, that the past year had been a "very difficult" one financially, and that she desired to have some independent business—an employment agency of her own. The entire question of Miss Barthe's employment was discussed, everyone present agreeing that they desired her to remain, and the directors suggested that she have her attorney draw up a proposed contract. This was the first time the question of the directory's relinquishing to Miss Barthe the service for placement of nonprofessionals had come before the directors, and at that time Miss Barthe explained to them that she thought such employment service was capable of earning $800 to $1,000 a month with proper handling (i.e., as a separate organization for nonprofessional nurses, technicians, etc., so that collections could more easily be enforced), but that during the year 1946 it had earned only "Six hundred and some dollars." The next meeting was held on January 25, 1947, at which time the contract here in dispute was presented to the board of directors by Miss Barthe. It was available for all the directors to read, though all may not have

done so, and all agreed that it should be approved. A resolution to that effect was passed, but it was felt that it should be put before the entire membership of the directory. The contract provided that the directory was to pay to Miss Barthe a minimum of $7,500 per year, commencing February 1, 1947; that she was to continue as executive director for five years with option to renew the agreement for a further term of five years, and was to pay all normal operating expenses of the directory office (excluding attorney's fees or extraordinary expenses); that the directory was to discontinue the operation of the placement service provided for nonprofessionals and thereby did "grant and assign to . . . [Miss Barthe] the right to operate said employment agency as her own business and for her own account, and to retain all of the proceeds and income of said employment agency for her own benefit." She was to "have the right to conduct said employment agency in conjunction with and in the same office occupied by the . . . [directory]" and "also have the right of placing all types of hospital, medical, household, restaurant, industrial and all allied types of help and employees."

Defendant Jean Barthe applied to the State Labor Commissioner for a license as a commercial employment agency and procured a license effective as of April 1, 1947, in the name of Jean Barthe, doing business as Western States Placement Bureau, and said defendant also registered the name Western States Placement Bureau as the fictitious name of her personal employment agency with the County Clerk of Alameda County.

On April 2 and 3 the annual membership meeting was held—on April 2 for those who worked at night, and on April 3 for those who were unable to come on April 2 because of work schedules. At that time the entire annual report, made up by Miss Barthe, which included the contract under consideration and the resolution of the directors at the January 25 meeting, was read to the members and approved in its entirety. Because subsequently there was some indication by rumor that there was dissatisfaction among the members with regard to the contract, a special membership meeting was called for April 15, at which 103 out of the approximately 315 members were present. The by-laws of the directory required a quorum of 30 per cent present for special meetings. The contract was read and discussed thoroughly, and 92 of the members voted in favor of the contract and 11 against it. The attorney for the directory, Mr. Meltzer, was out of town

at the time the contract was submitted and ratified by the directors and membership, but it was submitted to the attorney a week or ten days later on his return, at which time he indicated that it was an excellent contract from the directory's standpoint. Miss Negley, the directory president after April 2, testified: "He threw the contract on the table, and he said, 'You are very fortunate to have a contract at that figure.'"

New officers and board of directors elected by the membership took office on April 2 and were such at the time of trial. Miss Negley testified that no demand ever had been made upon her or the board of directors to cancel or set aside the contract, and that the first thing she knew was the service of the summons in the instant action. She also testified, however, that the present board of directors would not have instituted suit to set aside the contract or to prevent Miss Barthe from carrying on the placement service.

At the outset of the trial plaintiffs' attorney stated that all of the defendants with the exception of Miss Barthe, Miss Lenoir, a director, Miss Negley, the president since April 2, 1947, and a director, and the directory corporation had been dismissed from the present action.

Plaintiffs and appellants urge two main grounds for a reversal of the judgment: first, that defendants did not meet or overcome the presumption that the contract was entered into without sufficient consideration through fraud and undue influence; and, second, that the contract was void as a matter of law.

■ In support of their first contention appellants argue that defendant Jean Barthe was in a fiduciary position and they quote the following from section 498 of Restatement of Contracts as to the rule as to contracts entered into by fiduciaries: "'Where a beneficiary enters into a transaction with his fiduciary relating to matters within the scope of the fiduciary relation, the transaction is voidable, unless: (a) it is fair and reasonable, and (b) is assented to by all parties beneficially interested, with *knowledge* of their legal rights and of all relevant facts that the fiduciary knows or should know, and (c) these parties are of competent age and *understanding* and are not subjected to undue influence.' (Emphasis added.)" Appellants also cite section 2235 of the Civil Code which provides: "'Presumption against trustees. All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his bene-

ficiary, are *presumed* to be entered into by the latter without sufficient consideration, *and* under undue influence.' (Emphasis added.)''

There can be no doubt that defendant Jean Barthe occupied a confidential relationship toward the corporation and that the board of directors reposed complete trust and confidence in her. The court so found and the record supports such finding. But the court also found that the facts concerning the contract and its terms were fully and fairly presented to and considered by the board of directors and the membership, that defendant Jean Barthe in no way took any unfair advantage of them, and that she did not use the influence of her position to obtain any advantage of said corporation or the members thereof. The record supports these findings.

There is ample evidence from which it might be found that the contract was fair and reasonable and beneficial to the directory. Though the subsidiary placement service had a potential earning power greatly in excess of its actual income, there was evidence that this could not be realized under the limited control organization and the directory obtained through this contract the continued direction which it desired for its operation; the directory attorney who later was consulted stated that in his opinion it was a contract favorable to the directory; and various directors and officers of the corporation considered it provided for an arrangement to the directory corporation's benefit.

There is sufficient evidence to find that the members and directors assented to ratification of the contract with full knowledge of the facts. They had presented to them the annual report, financial and otherwise, which was prepared by Miss Barthe; there was no claim that it was inaccurate, and the annual audit was made by an outside firm. The contract was first discussed by the directors in December and again in January when it was ratified by them. It was then submitted to the membership as contained in the annual report, which was read all the way through to the assembled groups on April 2 and 3; and again the membership had the contract brought to its attention at the special meeting called on April 15 for that sole purpose.

While it is true that the law is very jealous of dealings between persons in confidential relationships and will scrutinize them searchingly, and even suspiciously, when the circumstances are such as to leave doubt that they were fairly obtained and justly procured, yet it is for the trial court to

say, after a consideration of the entire evidence, whether the transaction was fair and honest. The learned trial judge in the instant case was doubtless satisfied that any presumption of undue influence was overcome and that the contract was fair and equitable and not the result of fraud or undue influence. Upon the record here we believe that it would be a usurpation of the legitimate function of the trial court for us to say that any presumption of undue influence was not overcome and that the judgment should have been in favor of appellants.

There is little merit in appellants' final contention that the contract provided for a violation of Labor Code section 1595 and therefore was void. Said section provides: "Transfer of interest or right as to profits: Consent. If any licensee sells, transfers, or gives away any interest in or the right to participate in the profits of the employment agency without the written consent of the Labor Commissioner the license of the employment agency shall immediately become void and thereupon be surrendered to the Labor Commissioner." No written permission of the Labor Commissioner was necessary for the transfer of any license, inasmuch as Miss Barthe merely obtained in her own name a license to operate an employment agency effective April 1, 1947. Miss Barthe testified that nothing actually was assigned, and that the placement agency previously operated by the directory for nonprofessionals was not a separate employment agency with separate license and identity but was simply an activity of the directory to which the members of the directory chose to give a separate name. Miss Barthe continued her direction of the business of the corporation and the directors thereof merely agreed to discontinue those activities of the directory for the placement of nonmembers, generally referred to as the agency, and to consent to the use by Miss Barthe of the trade name which had theretofore been associated with the agency. The directory retained the license which it owned, and Miss Barthe carried on, under her own license which she had procured, the employment service for nonmembers which under the directory had been known as the agency. We are unable to perceive how the contract violated either the letter or the spirit of the Labor Code.

In view of the foregoing, the judgment should be and the same hereby is affirmed.

Peters, P. J., and Bray, J., concurred.